### In re: RELIANT ENERGY ERISA LITIGATION

**This Document Relates To: All Actions**

**No. H–02–2051.**

United States District Court,
S.D. Texas.
Houston Division.

Jan. 30, 2004.

---

648

John G. Emerson, Jr., Emerson Poynter LLP., Houston, TX, Robert A. Izard, Schatz & .Nobel, Hartford, CT, Amanda Frances Bell, Brant C. Martin, Puls Taylor et al, Fort Worth, TX, Scott E. Poynter, Emerson Poynter LLP, Little Rock, AR, for Plaintiff.

James Edward Maloney, Baker & Botts, Andrew Ramzel, Rusty Hardin & Assoc. PC, Jack D. Ballard, Attorney at Law, Houston, TX, Lawrence H. Hunt, Jr., R. Rene Pengra, Sidley Austin et al, Alison J. Maki, Randall M. Lending, Philip L. Mowery, Vedder Price et al, Chicago, IL, Gary S. Tell, Robert N. Eccles, O Melveny & Meyers, Washington, DC, for Defendants.

## MEMORANDUM AND ORDER

ATLAS, District Judge.

Pending before the Court is the Reliant Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. # 37]. Plaintiff has responded [Doc. # 73], and the Reliant Defendants have replied [Doc. # 83]. Also pending before the Court is Defendant Ennis Knupp's motion to dis-

miss Plaintiff's Second Amended Complaint [Doc. # 66]. Plaintiff has responded [Doc. # 80], and Ennis Knupp has replied [Doc. # 88]. The motions have been fully briefed,[1] and are ripe for determination. Having considered the parties' submissions, the applicable legal authorities, and all matters of record, the Court concludes the Reliant Defendants' motion should be **granted in part**, and Defendant Ennis Knupp's motion should be **granted** to the same extent as the Reliant Defendants' motion, but **denied in part**. Ennis Knupp remains a Defendant in this suit.

## I. *FACTUAL AND PROCEDURAL BACKGROUND*

This is an ERISA breach of fiduciary duty case. Defendant Reliant Energy, Inc. ("REI") is an energy services provider. In the late 1990s, REI, through its subsidiary Reliant Energy Services ("RES"), entered into the wholesale energy trading business. In December 2000, REI transferred all of its unregulated business, including RES, to a newly-formed subsidiary, Defendant Reliant Resources, Inc. ("RRI"). On April 30, 2001, 18% of the shares in RRI were offered to the public in an initial public offering. REI held the remaining shares until September 30, 2002. REI was then renamed CenterPoint Energy.[2]

Plaintiff, Brad Kirschbaum, an employee of REI, brings this suit as both a class action under Rule 23 of the Federal Rules of Civil Procedure and a representative action under ERISA. ERISA § 502(a)(2), 502(d)(1), 29 U.S.C. § 1132(a)(2) and 1132(d)(1). Plaintiff is a participant in an ERISA "defined contribution" or "individual account" plan which was offered to him by his employer, REI (the "REI Plan").[3] The plan offered participants the opportunity to contribute up to 16% of their compensation in pre-tax 401(k) contributions and/or after-tax contributions. The REI Plan offered a number of investment options in which to invest their contributions. One investment option under the REI Plan was the Reliant Energy Common Stock Fund (the "REI Fund") which was comprised primarily of REI common stock. The REI Plan also contained an Employee Stock Ownership Plan ("ESOP"). Under the ESOP, the company matched between a minimum of 75% and a maximum of 125% of the first 6% of a participant's contributions to the REI Plan. The matching contributions were paid in REI stock from the ESOP, and were allocated to the REI Fund. Similar plans were offered by Defendant RRI (the "RRI Plans").

Plaintiff's Second Amended Complaint ("Plaintiff's Complaint") generally alleges that the common stock of REI and RRI were imprudent investments, based both on public information and non-public information,[4] and that Defendants violated their

---

1. Plaintiff has also filed two notices of supplemental authority [Docs. # 84, 86], to which Defendant Ennis Knupp responded [Doc. # 88], and the parties filed final briefs in accordance with the Court's invitation to do so [Docs. # 90, 91].

2. The Court will refer to CenterPoint Energy as "REI" throughout this Memorandum. CenterPoint Energy does not appear to have anything to do with this case, as the class period ends July 24, 2002, before REI was renamed.

3. "The term 'individual account plan' or 'defined contribution plan' means a pension plan which provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." ERISA § 3(34), 29 U.S.C. § 1002(34).

4. The non-public information to which Plaintiff refers are the widely-publicized "round-trip trades" executed by several energy trad-

fiduciary duties under ERISA by continuing to offer REI and RRI stock (through the REI Fund and the RRI Funds, respectively) as investment options in their employees' defined contribution plans, despite REI and RRI stock being imprudent investments.

There are numerous Defendants in this case. They can be grouped as follows: (1) the REI Defendants: REI, the REI Benefits Committee members, and certain individual members of the REI Compensation Committee, (2) the RRI Defendants: RRI, members of the RRI Benefits Committee, and certain individual members of the RRI Compensation Committee, and (3) Ennis Knupp & Associates ("Ennis Knupp"), an independent investment consulting firm providing investment consulting services to the REI and RRI Plans.[5]

## II. APPLICABLE LEGAL STANDARDS

### A. Motions to Dismiss

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted. *Manguno v. Prudential Property and Cas. Ins. Co.*, 276 F.3d 720, 725 (5th Cir.2002). The complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true. *Id.* The district court may not dismiss a complaint under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Thus, the Court must determine whether the complaint states any legally valid claim for relief when construed in the light most favorable to the plaintiff and with every doubt resolved in the plaintiff's behalf. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000). Furthermore, a plaintiff must plead specific facts, not mere conclusory allegations or unwarranted deductions of fact, in order to avoid dismissal for failure to state a claim. *Id.*

In deciding a motion to dismiss, the Court may consider contents of SEC disclosure documents, *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1018 (5th Cir.1996) (securities fraud case), and the full text of documents referenced in the complaint that are integral to the complaint, *San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos.*, 75 F.3d 801, 808–09 (2d Cir.1996). The Court may also refer to documents of public record. *See Davis v. Bayless*, 70 F.3d 367, 372 n. 3 (5th Cir.1995).

### B. Pleading Standards

"The notice pleading requirements of Federal Rule of Civil Procedure 8 and case law do not require an inordinate amount of detail or precision." *St. Paul Mercury Insurance Co. v. Williamson*, 224 F.3d 425, 434 (5th Cir.2000). Rule 8(a) provides that the Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). Rule 8(e)(1) provides that the averments in a Complaint must be "simple, concise, and direct." FED. R. CIV. P. 8(e).

---

ers from around 1999–2001, including traders employed by a subsidiary of Defendant RRI. These round-trip trades were simultaneous purchases and sales of power or natural gas of the same volume with the same counterparty at the same price at the same delivery point. Plaintiff alleges that these transactions had the effect of artificially increasing revenues and trading volumes.

5. Plaintiff's Complaint also names another investment consultant, William M. Mercer, d/b/a Mercer Investment Consulting, Inc. but has voluntarily dismissed Mercer as a Defendant [Docs. # 67, 93].

The function of a complaint is to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002); *St. Paul*, 224 F.3d at 434. "Pursuant to Rule 8(a), a complaint will be deemed inadequate only if it fails to (1) provide notice of circumstances which give rise to the claim, or (2) set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist." *Beanal v. Freeport–McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir.1999). ERISA does not have heightened pleading requirements, but is subject to the notice pleading standard of Rule 8. *In re Enron*, 284 F.Supp.2d 511, 653 (S.D.Tex.2003) (citing *Heimann v. National Elevator Indus. Pension Fund*, 187 F.3d 493, 509, 511 (5th Cir.1999), *overruled on other grounds by Arana v. Ochsner Health Plan*, 338 F.3d 433, 440 n. 11 (5th Cir.2003)).

## III. *DISCUSSION*

Defendants move to dismiss Plaintiff's Complaint on several grounds. First, Defendants argue that Plaintiff does not have standing to bring his claim against RRI, the RRI Benefits Committee members, or the various individual RRI Defendants, as he has never been an employee of RRI, nor a participant in or beneficiary of any of the savings plans offered by that company. Next, Defendants argue that REI and the REI Compensation Committee members are not fiduciaries for purposes of this litigation. Third, Defendants argue that Plaintiff's Complaint fails to state a claim against the REI Benefits Committee because the claims attack the design of the Plans, which challenge is prohibited by the "settlor doctrine." Fourth, Defendants claim that Plaintiff has not alleged facts suggesting that the REI Benefits Committee members knew or should have known about the round-trip trades which allegedly artificially inflated REI and RRI revenues. Finally, Defendants contend Plaintiff's claims based on alleged misrepresentations must fail because any alleged misrepresentations were not made in a fiduciary capacity. Plaintiff opposes each of these arguments on various grounds.

The Court now turns to Defendants' various arguments for dismissal of each count of Plaintiff's Complaint.

### A. *Standing*

#### 1. Claims Against RRI Defendants

■ Plaintiff Brad Kirschbaum is a participant in the REI Savings Plan. He has never been employed by RRI and has never been a participant, beneficiary, or fiduciary of any of the RRI Plans. Defendants contend that because Plaintiff has never been a participant, beneficiary, or fiduciary of any of the RRI Plans, Plaintiff lacks standing to bring claims against the RRI Defendants in this case. *See Local 159 v. Nor–Cal Plumbing, Inc.*, 185 F.3d 978, 981 (9th Cir.1999); *Hall v. Lhaco, Inc.*, 140 F.3d 1190, 1197 (8th Cir.1998); *Adamson v. Armco, Inc.*, 44 F.3d 650, 654 (8th Cir.1995). Plaintiff responds that because he brings this suit as a class action and a representative action under ERISA, he has standing to pursue class claims against fiduciaries of plans in which he was not a participant or beneficiary, citing *Fallick v. Nationwide Mutual Ins. Co.*, 162 F.3d 410 (6th Cir.1998), and *Forbush v. J.C. Penney Co., Inc.*, 994 F.2d 1101 (5th Cir.1993).

In *Fallick*, the plaintiff, Fallick, was an employee of defendant, Nationwide Mutual Insurance Company, a subsidiary of Nationwide Life Insurance Company (collectively, "Nationwide"). These entities were the only defendants named in the suit. Fallick was a "participant" and "beneficiary" of the Nationwide Insurance Companies medical benefit plan. Fallick brought

suit against Nationwide, alleging violations of ERISA. Fallick also sought to represent "a class of beneficiaries and participants in ERISA plans covering employees of entities not affiliated with Nationwide but whose plans are administered or insured by Nationwide." *Fallick*, 162 F.3d at 412. The district court dismissed in part Fallick's complaint, "holding that Fallick lacked standing under Article III of the U.S. Constitution to represent participants in benefit plans other than his own." *Id.* The Sixth Circuit reversed, noting that the district court had confused class certification requirements with standing requirements. "[O]nce the district court correctly determined that Fallick had standing to bring suit under ERISA against Nationwide with respect to its application of reasonable and customary limitations to its determination of medical benefits—a methodology which, by Nationwide's own admission, it employs in all the benefits plans which Fallick wishes to include under the aegis of the proposed class—the court should then have analyzed whether Fallick satisfied the criteria of Rule 23 with respect to the absent class members." *Id.* at 423. The court of appeals noted: "A potential class representative must demonstrate individual standing vis à vis the defendant; he cannot acquire such standing merely by virtue of bringing a class action." *Id.* (citing *Brown v. Sibley*, 650 F.2d 760, 770 (5th Cir.1981)).

In *Forbush v. J.C. Penney Co.*, 994 F.2d 1101 (5th Cir.1993), the plaintiff sought to certify a class against J.C. Penney alleging that J.C. Penney's method for calculating social security offsets to its employees' pensions violated ERISA. The district court denied class certification on the grounds that because there were four different pension plans at issue, the commonality requirement was not met. The Fifth Circuit reversed, holding that the case could be certified as a class action despite the fact that four different pension plans were at issue.

Plaintiff Kirschbaum for his standing arguments regarding claims against RRI and the RRI individual defendants and entities places great weight on the *Fallick* and *Forbush* cases. However, these cases are inapposite. In *Fallick*, there was no question that the plaintiff had a justiciable controversy against both of the defendants named in the case: his employer, and his employer's parent company. Here, however, Plaintiff Kirschbaum has *no relationship whatsoever* with Defendant RRI or the RRI Plan, under ERISA or otherwise. "[H]e cannot acquire such standing merely by virtue of bringing a class action." *Brown*, 650 F.2d at 770. Reliance on *Forbush* is likewise unavailing. First of all, *Forbush* addressed Rule 23 requirements and did not involve a standing challenge. Second, there was no debate that plaintiff Forbush personally had a claim against J.C. Penney, her employer. She did not assert claims against other companies for whom she did not work. While there were four different plans at issue, all four plans were issued for defendant J.C. Penney employees. In the case at bar, in contrast, Kirschbaum seeks to assert claims against a company for whom he never worked, and who never offered any type of ERISA plan to him.

Basic standing principles dictate that Kirschbaum has no standing to assert claims against RRI and the related RRI Defendants. Plaintiff has no case or controversy with respect to RRI. He has never worked for RRI and he has never been a participant in *any* RRI plan. That Plaintiff seeks to represent a class of plaintiffs, some of whom might have standing to assert claims against RRI, does not relieve Plaintiff of the requirement that he personally must have a concrete complaint against the RRI Defendants. *Brown*, 650 F.2d at 770; *see also Warth v. Seldin*, 422

U.S. 490, 498, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975) ("In its constitutional dimension, standing imports justiciability: whether the plaintiff has made out a 'case or controversy' *between himself and the defendant* within the meaning of Article III.") (emphasis added). He does not have any such claim.[6] Therefore, Plaintiff's claims against RRI and the related Defendants in this case are **dismissed.** The remainder of this Memorandum refers only to the REI Defendants, as they are the only Defendants this Court has subject matter jurisdiction to address.

## 2. Section 502(a)(3) Claims

■ Defendants also argue that Plaintiff lacks standing under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to bring suit against any of the RRI or REI Defendants. Defendants here contend that § 502(a)(3) authorizes only equitable relief, and Plaintiff has requested "compensatory damages." While the issue of availability of compensatory relief under § 502(a)(3) does not appear to be a matter of "standing,"[7] the Court agrees with Defendants that only certain equitable relief can be ordered under § 502(a)(3). Nevertheless, Plaintiff's Complaint requests equitable relief, albeit in a somewhat conclusory and non-specific manner. Dismissal of the REI Defendants on this ground is not appropriate at this time. Plaintiff will be given an opportunity to file a Third Amended Complaint, and must plead with more particularity exactly what type of equitable relief Plaintiff actually seeks.

## B. *REI's Fiduciary Status*

REI moves to dismiss Plaintiff's claims against it on the grounds that Plaintiff has not properly alleged that REI is a fiduciary for purposes of this litigation. Specifically, REI argues that it is not a fiduciary with respect to the particular activities at issue in Plaintiff's Complaint. *See Bannistor v. Ullman,* 287 F.3d 394, 401 (5th Cir.2002) (noting that "a person is a fiduciary only with respect to those aspects of the plan over which he *exercises* authority or control." (emphasis added)).

Plaintiff makes several separate, but related allegations that REI is a fiduciary to the REI Plan. Plaintiff contends: (1) REI is a fiduciary because it is so defined in the REI Plan, and REI is a fiduciary because it appointed, monitored and removed the REI employees who were on the Committees and made the investment decisions for the Plans; (2) REI is a fiduciary because the Committees were agents of REI; (3) REI is a fiduciary because its Board of Directors is a fiduciary, and the Board is an agent of REI; (4) REI is a fiduciary because the Plan required it to provide the REI Benefits Committee all pertinent facts required for the Committees to perform their functions as fiduciaries; and (5) REI is a fiduciary because it signed Form S–8 Registration Statements under its own SEC Central Index Key, and because REI filed 11–K Annual Reports for the Plans under its own SEC Central Index Key.[8] Though many of these allegations are re-

---

**6.** The Court rejects Plaintiff's argument that the fact that RRI was previously a subsidiary of REI and that before February 2002, RRI employees participated in the REI Savings Plan gives Plaintiff standing to sue RRI. While these facts arguably would provide a basis for an RRI employee to sue fiduciaries of the REI Plan, they are of no avail to Plaintiff who has never worked for or had any personal connection to RRI.

**7.** "[D]emand of an improper remedy is not fatal to a party's pleading if the statement of the claim is otherwise sufficient to show entitlement to a different form of relief." *Doss v. South Central Bell Tel. Co.,* 834 F.2d 421, 423 n. 3 (5th Cir.1987); *see also Tittle v. Enron,* 284 F.Supp.2d 511, 612–13 (S.D.Tex.2003).

**8.** Plaintiff's Second Amended Complaint ("Plaintiff's Complaint"), ¶¶ 48–55.

lated, in the interest of completeness, each theory will be addressed separately.

### 1. Plan Definition of REI as a Fiduciary

Plaintiff first asserts that REI is a fiduciary because it is named as a fiduciary in the REI Plan. Fiduciaries may be named by a plan. *See* ERISA § 402(a)(1), 29 U.S.C. § 1102(a)(1) ("Every employee benefit plan shall be established and maintained pursuant to a written instrument. Such instrument shall provide for one or more named fiduciaries who jointly or severally shall have authority to control and manage the operation and administration of the plan.").[9]

Article I, § 1.26, of the REI Plan defines "fiduciary" for purposes of the REI Plan:

> *Fiduciaries:* The Employer, the Committee, the Trustee, and any other person designated as a Fiduciary with respect to the Plan or the Trust Agreement, *but only with respect to the specific responsibilities of each as described in Section 2.13 hereof.* Any person or group of persons may serve in more than one fiduciary capacity with respect to the Plan (emphasis added).

Section 2.13 of Article II of the REI Plan states, in relevant part, as follows:

> *Allocation of Responsibility Among Fiduciaries for Plan and Trust Administration:* The Fiduciaries shall have only those specific powers, duties, responsibilities and obligations as are specifically

given them under this Plan or the Trust Agreement. In general, the Employer [REI] shall have the sole responsibility for making the Contributions provided for under Sections 4.1, 4.2, and 4.3. *The Company [REI] shall have the sole authority to appoint and remove the Trustee and members of the [REI Benefits] Committee.* The Company [REI] may amend or terminate, in whole or in part, the Plan or Trust Agreement. The Committee shall have the sole responsibility for the administration of the Plan and the sole authority to appoint and remove any Investment Manager which may be provided for under the Trust..... It is intended under this Plan and the Trust Agreement that *each Fiduciary shall be responsible for the proper exercise of its own powers, duties, and responsibilities and obligations under this Plan and Trust Agreement and shall not be responsible for any act or failure to act of another Fiduciary.* No fiduciary guarantees the Trust Fund in any manner against investment loss or depreciation in asset value. (Emphasis added.)

█ Plaintiff's contention that REI is a fiduciary simply because REI is defined as such in the Plan is overbroad. The Plan terms make it clear that the label "fiduciary" extends only to the specific responsibilities allocated to that fiduciary under the Plan as written. There are only two relevant responsibilities granted to REI in the REI Plan: the power to appoint and remove the members of the Committee.[10]

---

9. Individuals may also acquire fiduciary status by falling within the definition of fiduciary enumerated in 29 U.S.C. § 1002(21)(A), which is discussed *infra.*

10. REI Plan, Article II, § 2.13. The power allocated to REI to amend or terminate the Plan does not give rise to fiduciary duties. *Lockheed v. Spink,* 517 U.S. 882, 890, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996) ("Plan

sponsors who alter the terms of a plan do not fall into the category of fiduciaries. As we said with respect to the amendment of welfare benefit plans in *Curtiss–Wright Corp. v. Schoonejongen,* 514 U.S. 73 [115 S.Ct. 1223, 131 L.Ed.2d 94] ... (1995), 'employers or other plan sponsors are generally free under ERISA, for any reason at any time, to adopt, modify, or terminate welfare plans.' *Id.* at 78 [115 S.Ct. 1223]. When employers undertake

656

The Court must determine what fiduciary duties REI may have by virtue of exercising these powers.[11]

The Fifth Circuit has addressed the issue of what specific fiduciary duties arise solely from the power to appoint plan administrators. *Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.* ("*Sommers I*"), 793 F.2d 1456 (5th Cir.1986). In *Sommers I*, a case brought against an employer for breach of fiduciary duty under ERISA and state common law, the Fifth Circuit held that the district court committed reversible error because its jury instructions "did not go far enough ... in spelling out the nature of control required before [the employer and controlling stockholder] could be considered fiduciaries." *Id.* at 1460. The Fifth Circuit interpreted ERISA's definition of "fiduciary,"[12] ultimately concluding that "a person is a fiduciary only with respect to those aspects of the plan over which he exercises authority or control. For example, if an employer and its board of directors have no power with respect to a plan other than to appoint the plan administrator and the trustees, then their fiduciary duty extends *only to those functions*." *Id.* at 1459–60 (emphasis added).

■ The power to appoint plan administrators gives rise to the duty "to adequately train and supervise ERISA fiduciaries." *American Fed. of Unions Local 102 Health & Welfare Fund v. Equitable Life Assur. Soc. of the U.S.*, 841 F.2d 658, 665 (5th Cir.1988) ("Liability for failure to adequately train and supervise an ERISA fi-

duciary arises where the person exercising supervisory authority is in a position to appoint or remove plan administrators and monitor their activities."); *see also* Amended Brief of the Secretary of Labor as Amicus Curiae Opposing the Motions to Dismiss in *Tittle v. Enron*, Exhibit B to Declaration of Wayne Bolton ("Under *Sommers Drug*, [defendants] are not responsible for fiduciary activities that they did not control and that fell outside the ambit of their fiduciary responsibility. Their obligation was to select and oversee the Administrative Committee and other fiduciaries, not to perform fiduciary activities delegated to others.... *Sommers Drug* stands for the unexceptional proposition that fiduciaries can only be held liable for conduct that falls within their fiduciary authority, and that they cannot be held directly liable for investment decisions over which they had no control.").

Therefore, in accordance with Fifth Circuit authority, the Court holds that REI's power to appoint and remove the Benefits Committee members gives rise to only the following fiduciary duties on the part of REI: (1) to appoint and remove Benefits Committee members in accord with the high standards required of fiduciaries, and (2) to adequately train, supervise, and monitor the Benefits Committee members. Plaintiff's Complaint does not allege that REI breached these duties. Instead, Plaintiff alleges that all Defendants breached their fiduciary duties because the REI Fund was an imprudent investment, and that Defendants breached their fiduciary duties by negligently misrepresent-

those actions, they do not act as fiduciaries ....").

11. Plaintiff properly alleges that Defendant REI exercised its power to appoint. Plaintiff's Complaint, ¶ 49.

12. "A person is a fiduciary with respect to a plan *to the extent* (i) he *exercises* any discre-

tionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A) (emphasis added).

ing and failing to disclose the true financial status of REI. REI's power to appoint and remove Benefits Committee members does not make REI a fiduciary with respect to any of the improprieties alleged in the Complaint.[13] Moreover, the REI Plan limits each fiduciary's scope of responsibility by providing that: "No fiduciary guarantees the Trust Fund in any manner against investment loss or depreciation in asset value." REI Plan § 2.13. Therefore, if REI is to have fiduciary liability to Plaintiff, it must arise from conduct of REI outside the power allocated to REI in the Plan itself.

### 2. REI Benefits Committee as Agents of REI

██ Plaintiff next alleges that REI is a fiduciary because the REI Benefits Committee members are agents of REI.[14] This allegation invokes principles of *respondeat superior* liability. The Fifth Circuit has held that *respondeat superior* liability may attach under ERISA. *Bannistor v. Ullman*, 287 F.3d 394, 408 (5th Cir.2002) ("In *American Federation of Unions Local 102*, [841 F.2d at 665], we held that non-fiduciary *respondeat superior* liability attached under ERISA only when the principal 'actively and knowingly' participated in

the agent's breach."). "In the context of *respondeat superior* liability, the issue is whether the principal, by virtue of its de facto control over the agent, had control over the disposition of the plan assets." *Bannistor*, 287 F.3d at 408. This requirement makes sense in light of the fact that ERISA permits an ERISA fiduciary to wear "two hats," for example, as employee and fiduciary. *See Pegram v. Herdrich*, 530 U.S. 211, 225, 120 S.Ct. 2143, 147 L.Ed.2d 164 (2000) (cited in *In re WorldCom ERISA Litig.*, 263 F.Supp.2d 745, 757 (S.D.N.Y.2003)). Therefore, ultimately to prevail on a theory of *respondeat superior* liability against REI, Plaintiff must show that by virtue of its *de facto* control over the REI Benefits Committee members, REI had discretionary control over Plan management or Plan assets.

Plaintiff makes simple allegations that REI "had control over the actions of the Committees and their members and are liable for their actions," [15] and that "all Committee members were [REI] employees who served at the pleasure of the [REI] Board without additional compensation. Moreover, pursuant to the Plans, Committee members are indemnified by Reliant Energy and Reliant Resources for any obligations they incur in connection

---

**13.** The duty to monitor the performance of the Benefits Committee members does not give rise to overarching liability for the Committee's investment decisions. Liability based on a failure to monitor does not arise unless the appointing fiduciary failed to periodically monitor the performance of each of the appointed members of the REI Benefits Committee. The Department of Labor has promulgated an ERISA Interpretive Bulletin which explains the fiduciary duties arising out of an appointment power. "Q: What are the ongoing responsibilities of a fiduciary who has appointed trustees ·or other fiduciaries with respect to these appointments? A: At reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that

their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan." 29 C.F.R. § 2509.75–8 (FR–17 Q & A). Plaintiff has not alleged that REI failed to review the performance of the Benefits Committee members. By way of contrast, good examples of allegations of failure to monitor are found in the Complaint in *Tittle v. Enron*, 284 F.Supp.2d at 659 n. 148 (noting that the plaintiffs' complaint alleges that one member of the Enron Benefits Committee "admitted he was incompetent to fill his fiduciary duties on the Committee").

**14.** Plaintiff's Complaint, ¶ 50.

**15.** Plaintiff's Complaint, ¶ 50.

with their services on the Committees."[16] The Fifth Circuit has explicitly held that *respondeat superior* is a viable theory of liability under ERISA, and Plaintiff has given REI sufficient notice that he claims that REI had *de facto* control over the Plan, by virtue of its control over and/or relationships with the REI Benefit Committee members. Accordingly, dismissal of Plaintiff's breach of fiduciary claims based on a *respondeat superior* theory against REI is not warranted as a matter of law on a motion to dismiss based on Plaintiff's pleadings.[17]

### 3. REI's Board of Directors *Per Se* As Fiduciaries

■ Plaintiff alleges that "Reliant Energy and Reliant Resources were also fiduciaries in that their Boards of Directors were fiduciaries *as alleged below*, and the Boards are, by definition, agents of the corporation" (emphasis added).[18] However, Plaintiff never goes on to allege facts to support the theory that the REI Board of Directors, as a whole, is a fiduciary. Plaintiff merely alleges that certain individual members of the REI Board of Directors are fiduciaries by virtue of their participation on either the Benefits Committee or Compensation Committee. Plaintiff's bare allegation that the REI Board of Directors *per se* is a fiduciary of the REI Plan is not a viable theory of liability against REI.[19]

### 4. REI's Duty Under the Plan to Provide the Benefits Committee All Pertinent Information

■ Plaintiff alleges that REI had a duty to disclose to the REI Benefits Committee "all pertinent facts required for the Committees to perform their function as fiduciaries."[20] Plaintiff alleges that this duty to disclose arises from REI's power of appointment.[21] In sup-

---

**16.** *Id.*

**17.** The cases cited by Defendants do not require a contrary result. Not only are these decisions not binding authority on this Court, but they are readily distinguishable from the case at hand both factually and procedurally. In *Gelardi v. Pertec Computer Corp.*, 761 F.2d 1323, 1325 (9th Cir.1985), and *In re La.-Pac. ERISA Litig.*, 2003 WL 21087593, **5, 9 (D.Or.2003), the possibility of *respondeat superior* liability was not addressed. In *Cosgrove v. Circle K Corp.*, 884 F.Supp. 350, 353 (D.Ariz.1995), the court ruled on a motion for summary judgment and the adequacy of the plaintiff's pleading was not an issue.

**18.** Plaintiff's Complaint, ¶ 51.

**19.** For this reason, Plaintiff's claims against R. Steve Letbetter must be dismissed. During the relevant time period, Defendant Letbetter was the Chairman, President, CEO and a Director of REI. He is currently the CEO of RRI. Plaintiff has not alleged that Defendant Letbetter served on any of the Committees alleged to have fiduciary responsibilities in this case. Defendant Letbetter is not a fiduciary merely by virtue of the fact that he is a director of REI and RRI.

**20.** Plaintiff's Complaint, ¶ 52.

**21.** Plaintiff's Complaint, ¶ 49 ("[T]o the extent that Reliant Energy and Reliant Resources had information that these appointees needed in order to perform their duties effectively, ... Reliant Energy and Reliant Resources had a duty to convey that information to the appointees."). Plaintiff also cites the only explicit reference within the REI Plan which charges the Employer to provide any information to the Committees: to "supply full and timely information to the Committee of all matters relating to the dates of employment of its Employees for purposes of determining eligibility of Employees to participate hereunder ... and such other pertinent facts as the Committee may require." This provision provides no support for Plaintiff's claim that REI is a fiduciary, because this duty has absolutely nothing to do with the breaches of fiduciary duty alleged in the complaint. This paragraph refers to the Employer's duty to provide information about *employees* that may affect their right to benefits under the Plan. This is entirely unrelated to the case at hand.

port of the imposition of this duty, Plaintiff cites *In re WorldCom, Inc. ERISA Litig.*, 263 F.Supp.2d 745 (S.D.N.Y.2003). There, a New York district court held that a corporate officer of WorldCom, Bernard J. Ebbers, was properly alleged to be a fiduciary in that he was "alleged to have exercised discretionary authority and discretionary control over the administration and management of the plan." Then, the court held that plaintiffs stated a claim against Ebbers for his failure "to disclose to the Investment Fiduciary and the other investing fiduciaries material information he had regarding the prudence of investing in WorldCom stock." *Id.* at 765. *WorldCom* does not support Plaintiff's contention that all corporations and their officers *per se* have a fiduciary duty to disclose any and all adverse information to a plan administrator or to fiduciaries. Rather, *WorldCom* holds that once a person is properly alleged to have discretionary control over an ERISA plan's management or assets, not merely a duty to appoint and monitor the benefits committee's performance, that person has a duty to disclose material adverse information. Here, the only duties under the Plan that REI has are the duty to appoint the Benefits Committee members, and the authority to remove the members if REI deems necessary or appropriate. Those limited fiduciary duties do not give rise to the expansive duty to disclose all allegedly pertinent information to the Plan fiduciaries, nor does it make REI itself a fiduciary.

### 5. REI's Filing of Form S–8 Registration Statements and 11–K Annual Reports for the Plans

Plaintiff alleges that REI is a fiduciary of the REI Plan because REI signed and filed with the SEC a Form S–8 Registration Statement ("Form S–8") under REI's SEC Central Index Key, and because the Form S–8 is a representation to Plan participants made in a fiduciary capacity.[22] REI most recently filed a Form S–8 in connection with the REI Plan on May 28, 1999.[23] Plaintiff in Count III of the Complaint alleges simply that REI and other Defendants negligently made material false or misleading public statements (relating to the "round-trip trades"), in REI's SEC filings, which statements were incorporated by operation of law into the Form S–8 and caused the REI Fund to be an imprudent investment. Plaintiff then lists the financial reports REI filed for periods ending June 30, 1999, September 20, 1999, and eleven other reports during the class period,[24] and claims that the reports negligently misrepresented that REI had attained publicly reported financial results that were artificially inflated.[25] Plaintiff also alleges that pursuant to their ERISA duties, "Defendants" "disseminated the Form S–8 Registration Statements to Participants in a fiduciary capacity";[26] that "the Form S–8 incorporated by reference [REI's] SEC filings," "consequently, the SEC filings were part of the Form S–8"; and that "Defendants exercised discretion in the dissemination of the Form S–8 by including reference [to] their SEC filings, which were necessary for management of

---

**22.** Plaintiff's Complaint, ¶ 54.

**23.** Exhibit 4 to Reliant Defendants' Notice of Submission of Additional Materials in Connection with Reliant Defendants' Motion to Dismiss [Doc. # 95]. REI also filed Forms S–8 on September 7, 1994, August 8, 1997, and May 22, 1998. The Court will focus on the

May 28, 1999 Form S–8, as it is the Form S–8 filed nearest the start of the class period.

**24.** Plaintiff's Complaint, ¶ 105.

**25.** *Id.*, ¶ 107.

**26.** *Id.*, ¶ 109.

Plan assets and were intended to communicate to Participants information necessary for Participants to manage their retirement benefits under the Plan." [27]

Plaintiff alleges that REI's signing and filing the Form S–8 were fiduciary acts, but does not expressly allege that any statements in REI's May 1999 Form S–8 *per se* were misleading or otherwise misrepresentations. It is undisputed that the Form S–8 was filed prior to the class period. Plaintiff also claims that the SEC reports REI filed after the May 1999 Form S–8, which reports were incorporated by reference as a matter of law into that Form S–8, were materially false. Plaintiff's theory thus appears to be that REI's decisions as to what information to include in the SEC reports during the class period were discretionary acts of a fiduciary to the REI Plan.

It is undisputed that the Form S–8 is a document required by the SEC, in which companies register securities they offer to employees or employees of subsidiaries or parents under an employee benefit plan.[28]

Under SEC Rule 428, the issuer of the stock (and the registrant, here REI), in addition to filing the Form S–8, must provide to the plan participants the information in the Form S–8 as well as the information incorporated by reference into that document at the time the Form S–8 is filed. 17 C.F.R. § 230.428(b)(1)(i).[29] Most significantly, the registrant must update the information "to reflect any material changes during any period in which offers or sales are being made," and *must supply the plan participants with the notice* that the new information is available. *Id.*[30]

To decide if REI could possibly be a fiduciary under ERISA, the Court must address each aspect of Plaintiff's theory of REI's liability. *See Varity Corp. v. Howe,* 516 U.S. 489, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996). Plaintiff first claims that REI's "filing and signing" *per se* of the Form S–8 are acts performed in a fiduciary capacity. The Court assumes, although it is far from clear, that Plaintiff contends that the May 1999 Form S–8 contains misrepresentations to participants. Plaintiff

---

**27.** *Id.,* ¶ 110.

**28.** Exhibit C to Bolton Declaration [Doc. # 72], Form S–8.

**29.** Rule 428(b)(1)(i) provides:

The registrant shall deliver or cause to be delivered, to each employee who is eligible to participate (or selected by the registrant to participate, in the case of a stock option or other plan with selective participation) in an employee benefit plan to which the registration statement relates, the information required by Part I of Form S–8. The information shall be in written form and shall be updated in writing in a timely manner to reflect any material changes during any period in which offers or sales are being made. **When updating information is furnished**, documents previously furnished need not be re-delivered, but the registrant shall furnish promptly without charge to each employee, upon written or oral request, a copy of all documents con-

taining the plan information required by Part I that then constitute part of the section 10(a) prospectus. (Emphasis added.) At the time the Form S–8 is filed, SEC Rule 428 specifically directs the registrant to provide to the plan participants certain information about the Plan, statement of availability of registrant (REI) information, employee benefit plan annual reports, and the documents containing registrant information and employee benefit plan annual reports that are incorporated by reference in the registration statement. *See* SEC Rule 428(a)(1).

**30.** *See* SEC Rule 428, 17 C.F.R. § 230.428(b)(1)(i) (Part I information), (2)(i) & (ii) (registrant must inform participant of availability of financial information on plan and registrant, and registrant' recent annual reports, form required by Rule 14a–3(b) and Form 10–K), (b)(2)(iii) (registrant's audited financial statements), and (b)(3) (Form S–8 Part 3 information on registrant); *see* Gen'l Instructions for Form S–8 (SEC 1398 (9–01)), at 5, ¶ G(2); *id.,* at 6.

also appears to contend that the Form S–8's incorporation by reference of subsequent REI SEC reports is a fiduciary act. Third, Plaintiff seems to assert, if only implicitly, that REI engaged in discretionary (and thus fiduciary) acts when deciding what to include in the SEC reports it filed after filing the Form S–8, which information REI was required to disclose (or give notice of its availability) to participants.

The Court concludes that to the extent Plaintiff claims that the forms incorporated by reference into the Form S–8 and subsequent SEC reports contain misrepresentations or material omissions, the allegations are legally sufficient at this pleading stage for REI to qualify as a fiduciary under ERISA. Construing the Complaint broadly, as is required on a motion to dismiss, the Court interprets Plaintiff's allegations concerning REI's "signing and filing" of the Form S–8 to encompass REI's decisions about what to disclose in REI's prior SEC filings that were incorporated into the Form S–8. The Court recognizes the filing of a Form S–8

*per se* is a requirement of the SEC, thus arguably not discretionary, and, consequently, not a fiduciary act.[31] However, Plaintiff's allegations encompass the theory that REI made discretionary decisions about the substantive contents of the Form S–8, as well as about the contents of other SEC reports that REI knew were incorporated by reference into the Form S–8. Additionally, the SEC's rules indicate that REI had a duty to provide to the REI Plan and possibly to the REI Plan participants, the REI Form S–8 when it was filed, as well as copies of (or references to the availability of information about) the Plan, its financial condition, and REI's financial condition at or shortly before the time the Form S–8 was filed. These acts are sufficient, for the purposes of the pending motion to dismiss, to meet the pleading requirements that REI has engaged in discretionary acts and thus may be a fiduciary of the REI Plan.[32]

Furthermore, and possibly significant to this case, SEC Rule 428 requires that the registrant update the Form S–8 disclo-

**31.** ERISA states that "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets . . . or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan." ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A). In *Varity*, the Supreme Court explained certain requirements before actions can be labeled "fiduciary acts," and thus subject to liability for breach of fiduciary duty, under ERISA. The Supreme Court first noted that " 'fiduciary' acts" are those that can fairly be called "discretionary acts of plan 'management' and 'administration.' " *Id.* at 501–02, 116 S.Ct. 1065. "The ordinary trust law understanding of fiduciary 'administration' of a trust is that to act as an administrator is to perform the duties imposed, or exercise powers conferred, by the trust documents. The law of trusts also understands a trust document to implicit-

ly confer 'such powers as are necessary or appropriate for the carrying out of the purposes' of the trust." *Id.* at 502, 116 S.Ct. 1065 (internal citation omitted). Applying that standard to the facts before it, the Supreme Court in *Varity* held that "conveying information about the likely future of plan benefits, thereby permitting beneficiaries to make an informed choice about continued participation, would seem to be an exercise of a power 'appropriate' to carrying out an important plan purpose." *Id.* at 502, 116 S.Ct. 1065.

**32.** If Plaintiff in fact relies on the signing and filing of the Form S–8 *per se* to establish REI as a fiduciary or for breach of a fiduciary duty, the statute of limitations may be an issue. However, this question is beyond the scope of the parties' briefing and this Court's determinations. Plaintiff will be required to plead his theory more precisely in light of this Memorandum so that the limitations issue can be addressed, if and when appropriate.

sures to reflect "any material changes" during the period the stock under registration is offered, as well as furnish the updating information to plan participants.[33] The Court therefore cannot conclude as a matter of law that REI as a Form S–8 registrant, did not continue to exercise discretion related to disclosures to the REI Plan and its participants during the class period in regard to its SEC filings during that period. For instance, as a result of the Form S–8 registration, the issuer, REI, apparently was obligated to disclose or make available to the REI Plan, upon request, SEC reports, such as Forms 10–K filed during 1999 through 2001. The decisions about what to include in periodic SEC reports and disclosures, and whether to disclose events as "materi-

al changes" that require fresh disclosure to the plan participants, appear at this stage to be continuing acts requiring discretion.[34] Accordingly, to the extent that the REI Plan contemplates the offering of REI stock to its employees, the filing and updating of a Form S–8 are acts "necessary" "for carrying out the purposes" of the trust, and are implicitly a "duty imposed by the trust documents," *Varity*, 516 U.S. at 502, 116 S.Ct. 1065.[35] The Court therefore cannot conclude that there are no set of facts that will state a claim that REI is a fiduciary of the REI Plan.[36]

To the extent, however, Plaintiff construes REI to be a fiduciary of the REI Plan simply because the REI Form S–8 incorporates by reference future SEC filings, Plaintiff's theory fails. The fact of

---

**33.** SEC Rule 428(b)(1)(i), 17 C.F.R. § 230.428(b)(1)(i).

**34.** Although the REI Plan, and, indeed, ERISA, do not explicitly impose a duty on REI (or the REI Benefits Committee) to file a Form S–8 or to update that report with material changes, the Plan clearly contemplates that REI stock will be offered to Plan participants and the stock must be offered in accordance with all legal requirements, including those imposed by the SEC.

**35.** This conclusion is preliminary and is issued without prejudice to reconsideration after the facts are more fully developed. The Court lacks familiarity with the detailed requirements associated with the filing of a Form S–8. Also, it is unclear if Plaintiff can establish that REI's SEC filings contained representations about the financial future of the company, which representations were connected to statements about future plan benefits, inter-related representations that were significant in *Varity*. Also, there is an issue of whether the filing of a Form S–8 and the incorporation of other SEC filings is merely ministerial in light of the Plan requirements that REI stock be offered in to the participants. The United States Department of Labor has made clear that "[p]reparation of reports required by government agencies" does not by itself confer fiduciary status upon a person. 29 C.F.R. § 2509.75–8(D–2)

(2003); *see also In re WorldCom, Inc.*, 263 F.Supp.2d 745, 766 (S.D.N.Y.2003) ("Those who prepare and sign SEC filings do not become ERISA fiduciaries through those acts, and consequently, do not violate ERISA if the filings contain misrepresentations."). Nevertheless, Plaintiff is entitled to the benefit of the doubt at the pleading stage. The legal rulings in *Varity* were made on a full factual record developed in connection with a substantial preliminary injunction hearing, if not a full trial.

**36.** This issue implicates interesting competing policies. On the one hand, it is questionable that Congress intended ERISA to provide a back door for liability under a standard similar to mere negligence for what amount to alleged securities violations. On the other hand, the requirement that plan participants cede day-to-day responsibilities and most control over their property to plan fiduciaries, and the fact that retirement funds are involved, mandates a broad reading of ERISA and its definition of "fiduciary." It may be that because the remedies under ERISA most likely are far more limited than the recoveries available under the securities laws, the lower standard of proof for a violation of fiduciary duty than violation of the securities laws may make sense.

the incorporation *per se* of future SEC reports is not an act, let alone a discretionary act, giving rise to a fiduciary capacity. Plaintiff has presented no authority to establish that the legally-required incorporation of future filings is properly characterized as an exercise of discretionary authority or. control over plan administration or its assets. Thus, the Court holds that the mere fact that REI's Form S–8 incorporates by reference later REI SEC reports is not a fiduciary act.[37]

Plaintiff also cites to REI's filing of Forms 11–K as fiduciary acts by REI. The Court is unpersuaded. The Form 11–K is used for annual reports of employee stock purchase, savings and similar plans pursuant to § 15(d) of the Securities Exchange Act of 1934.[38] The Form 11–K is to be signed by an employee benefit plan administrator on behalf of the plan. The Form 11–K is not filed by REI, but by the REI Benefits Committee. Therefore, REI is not a fiduciary simply because one of its officers, acting in the capacity of a plan administrator, files a Form 11–K.

### 6. Conclusion on the Fiduciary Status of REI

For the reasons stated above, the Court denies Defendant's Motion to Dismiss REI as a non-fiduciary to the extent Plaintiff

alleges that REI is a fiduciary of the REI Plan with respect to alleged misrepresentations in SEC filings supplied or available to the REI Plan or its participants as a result of REI's performance of discretionary duties, if any, in connection with its filing of a Form S–8 through which REI registered the stock used in the REI Fund and the ESOP. REI also remains in the suit under the doctrine of *respondeat superior.* Plaintiff's other theories concerning REI being a fiduciary are rejected.[39]

### C. *Fiduciary Status of the REI Compensation Committee Directors*

■ Plaintiff alleges that "the Directors of Reliant Energy and Reliant Resources who were on the two companies' respective Compensation Committees were fiduciaries pursuant to ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), in that they exercised discretionary authority or control respecting management of the Plans or management or disposition of [their] assets."[40] This allegation is nothing more than a conclusory assertion concerning the Compensation Committee. Moreover, nothing Plaintiff alleges in his forty-page Complaint supports this speculation. Such a vague, conclusory allegation does not suffice to survive a motion to dismiss. *See ABC Arbitrage Plaintiffs Group v. Tchu-*

---

37. The Court also rejects Plaintiff's implicit argument that REI's decision to offer REI stock as an investment option was the discretionary act that triggers fiduciary liability. The decision to issue REI stock for the REI Plan involves settlor functions which do not give rise to fiduciary liability. *See infra* Section III(E)(1)(a). The Court is not holding that the REI Plan required the REI Fund to *always remain* an investment option for participants under the Plan, but the decision to initially issue stock to its employees through the REI Fund and matching ESOP contributions was part of the REI Plan's creation, and, thus, was not a fiduciary decision.

38. Form 11–K Instruction Form.

39. Plaintiff also alleges that "[REI][was] also [a] fiduciar[y] because [it was] described as Plan Administrators to Participants. For example, the Customer Service Representative who responded to telephone inquiries from Participants were provided with a written script that identified Reliant Energy as the Plan Administrator." Plaintiff's Complaint, ¶ 53. This allegation *per se* is insufficient to make REI a fiduciary. The Court does not rely on this allegation in concluding that Plaintiff has properly alleged that REI is a fiduciary for purposes of Count III.

40. Plaintiff's Complaint, ¶ 56.

*ruk,* 291 F.3d 336, 348 (5th Cir.2002) (footnote omitted) ("conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent dismissal under Rule 12(b)(6).").[41]

Plaintiff adds the following in an attempt to bolster his claim that the Compensation Committee members were fiduciaries: "In addition to duties given to all the company directors as set forth in the documents establishing the Plans, the REI Compensation Committee had specific responsibilities as set forth in REI's Proxy Statement filed with the SEC on April 26, 2002: 'The [compensation] committee also administers incentive compensation plans and reviews human resources programs.' "[42] An examination of this Proxy Statement, however, makes clear that the Compensation Committee's functions referred to in that document relate to executive compensation and bonuses, not REI's defined contribution plan:

> The Compensation Committee ... oversees compensation and benefits for Reliant Energy's senior officers, including salary, bonus, and incentive awards. The committee also administers incentive compensation plans and reviews human resource programs. The Compensation Committee's report on executive compensation begins on page 15.[43]

Reference to the proxy statement does nothing to assist Plaintiff to state a viable claim that the REI Compensation Committee Directors were fiduciaries in the REI Plan.

██ Plaintiff also alleges on "information and belief" that the "Compensation Committee Directors of Reliant Energy appointed, monitored and removed the Reliant Energy employees who were on the [Benefits] Committees and who made the investment decisions for the Plans." As stated earlier in regard to REI's own potential liability,[44] ERISA imposes liability for breaches of only fiduciary obligations related to the fiduciary's specific functions. *Bannistor,* 287 F.3d at 401. Plaintiff has not alleged that the Compensation Committee breached duties attendant to an appointment or removal power, specifically, the duty to appoint with a high degree of prudence and care and to monitor the performance of the Committee members. Plaintiffs claims against the Compensation Committee Director Defendants are accordingly **dismissed.**

### D. *Ennis Knupp as a Fiduciary*

██ Plaintiff also sues Ennis Knupp in this case, alleging Ennis Knupp is a fiduciary and thus is also responsible for the breaches of fiduciary duty outlined in the Complaint. Ennis Knupp is an independent investment consulting firm that provides advice to large institutional investors on the management and oversight of their investment programs.[45] Ennis Knupp moves to dismiss Plaintiff's claims against it on the grounds that it is not a fiduciary for purposes of this litigation.

Plaintiff's Complaint alleges that Ennis Knupp is a fiduciary "by virtue of the quantity and quality of discretion it exercised over the administration of the Plans."[46] Specifically, Plaintiff alleges that Ennis Knupp "assisted in the evalua-

---

**41.** Plaintiff's boilerplate allegation concerning the Compensation Committee's duties is also counter-intuitive, unlike the brief allegation concerning REI's *de facto* control over the Benefits Committee members whom Plaintiff claims also are officers of REI.

**42.** *Id.*

**43.** Exhibit K to Reliant Defendants' Motion, at 5.

**44.** *See supra* Section III(B).

**45.** Plaintiff's Complaint, ¶ 17.

**46.** Plaintiff's Complaint, ¶ 59.

tion of index fund providers to manage the REI Savings Plan," and "reviewed the fees proposed by the Trustee of the REI Savings Plan, Northern Trust, and concluded that such fees were reasonable."[47] In response to Ennis Knupp's motion to dismiss, Plaintiff argues that Ennis Knupp "made recommendations for investment fund alternatives" for the REI Plan.[48]

Ennis Knupp contends that Plaintiff's allegations are insufficient to establish that Ennis Knupp exercised the degree of control over the administration of the plan required for an investment advisor to be considered a fiduciary. *See Reich v. Lancaster,* 55 F.3d 1034, 1048–49 (5th Cir. 1995) (holding that consultants or advisors are not fiduciaries to ERISA plans "even if [they] render advice and play influential roles by virtue of the expertise that they possess or the capacities in which they act," unless they "usurped the [administrator's] independent discretion and effectively exercised authority and control . . . that amounts to actual decision making power."); *accord Schloegel v. Boswell,* 994 F.2d 266, 271–72 (5th Cir.1993) ("To satisfy the 'authority or control' element under subsection (i), the Plaintiffs must demonstrate that Boswell caused the trustee Eastland to relinquish his independent discretion in investing the plan's funds and follow the course prescribed by [the defendant]").

*Reich* and *Schloegel,* both appeals following bench trials, do not require dismissal of Plaintiff's claims against Ennis Knupp at this early stage in the litigation. Plaintiff is not required to allege facts conclusively establishing that Ennis Knupp "usurped" the REI Benefits Committee's discretion at the motion to dismiss stage. Plaintiff is merely required to give fair notice of his claim and the grounds upon which it rests. Plaintiff's Complaint and Response allege that Ennis Knupp was involved in the investment decisions of the REI Benefits Committee, and suggest that the Committee members relied on the firm in making key decisions. While it is far from clear that Plaintiff will sustain his ultimate burden on some or all of the theories Plaintiff now alleges against Ennis Knupp, the Court cannot at this stage conclude there are no set of facts that will entitle Plaintiff to relief against Ennis Knupp as a fiduciary. Plaintiff's allegations regarding Ennis Knupp's involvement in the REI Benefits Committee's investment decisions are sufficient for purposes of surviving a motion to dismiss.[49]

On the other hand, Plaintiff's allegations do not provide any basis for liability against Ennis Knupp in relation to the RRI Benefits Committee, as Plaintiff has no standing to assert claims involving RRI Plan. Further, it is not apparent how Ennis Knupp could have been involved in the alleged misrepresentations and non-disclosures Plaintiff cites in Count III. Therefore, Plaintiff is required to amend his Complaint to specify which claims are asserted against Ennis Knupp and, for that matter, against each remaining Defendant.

### E. Conclusion on the Fiduciary Status of Defendants

As outlined above, RRI and the RRI individual defendants, and the REI Compensation Committee Directors must be

---

47. Plaintiff also alleges that Ennis Knupp performed certain fiduciary functions for the RRI Benefits Committee. Because Plaintiff has no standing to pursue claims against the RRI Defendants in this case, these fiduciary allegations are disregarded.

48. Plaintiff's Response to Defendant Ennis Knupp's motion ("Plaintiff's Response"), at 11, citing RRI ERISA 000975–1104.

49. Plaintiff may amend his Complaint to add an allegation referencing Ennis Knupp's recommendations for investment fund alternatives.

dismissed from this suit. REI, the REI Benefits Committee, and Ennis Knupp remain in this suit.[50] REI is properly alleged to be a fiduciary for purposes of Count III, and REI remains potentially subject to *respondeat superior* liability. The REI Benefits Committee is properly alleged to be a fiduciary for purposes of Counts I, II, and III. Ennis Knupp is properly alleged to be a fiduciary for purposes of Counts I and II, but Plaintiff will be required to amend his Complaint to allege facts supporting the claim that Ennis Knupp is a fiduciary with respect to Count III, if Plaintiff intends to sue Ennis Knupp under this count.

### F. Breaches of Fiduciary Duty

The Court now addresses Defendants' claims of deficiencies in the causes of action pled by Plaintiff substantively. Defendants do not claim that the REI Benefits Committee was not a fiduciary. Instead, Defendants move to dismiss Plaintiff's three claims for failure to state a claim upon which relief can be granted.

### 1. Count I: Alleged Breach of Fiduciary Duty By Imprudent Investments In Company Stock Based on Public Information.

Count I alleges that "All Defendants breached their fiduciary duties because the funds were imprudent investments based on public information that should have been known to all defendants."[51] More specifically, Plaintiff alleges that

During the Class Period [August 2, 1999–July 24, 2002], Reliant Energy and Reliant Resources were engaged in an effort to transform a traditional power utility company into a speculative energy trading operation. REI had historically been a staid, regulated power company, providing steady revenues and substantive dividends. It was a classic long-term conservative investment. During the Class Period, REI and subsequently, its 82% owned RRI spin-off, ventured into the energy trading markets. Energy trading of this type, and on this scale was a brand-new, speculative business fraught with risk, which—particularly after the spectacular collapse of Enron Corp.—was not a conservative investment. As a result, the Funds became risky and volatile investments. Defendants should not have directed the Plans' and Participants' investment of such massive amounts, or such a large percentage of their assets, in speculative, high-risk investments like the Funds, when the Plans' purpose was to protect the retirement income security of Participants. Defendants should have known that the Plans were making imprudent investments in the Funds

50. Because Plaintiff has sufficiently alleged that REI, the REI Benefits Committee, and Ennis Knupp are fiduciaries for the purposes of certain claims in this suit, the Court declines to dismiss Plaintiff's allegations concerning each of these Defendants' co-fiduciary liability. *See* ERISA § 405(a), 29 U.S.C. § 1105(a) ("a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances: (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his

failure to comply with § 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary he makes reasonable efforts under the circumstances to remedy the breach."). While it is far from clear that Plaintiff ultimately will make the *showing required under* ERISA for co-fiduciary liability, because these Defendants are properly alleged to be fiduciaries, they potentially are subject to co-fiduciary liability.

51. *Id.,* ¶ 71.

based on substantial public information
. . . [52]

### a. Settlor Doctrine and ESOP Plans

Defendants move to dismiss Count I on the grounds that it impermissibly attacks the design and structure of the Plan in violation of the "settlor doctrine." The Supreme Court repeatedly has held that a plan sponsor's decision regarding the design of a plan is a "settlor" function that is not subject to review under the fiduciary duty provisions of ERISA. *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 433–34, 119 S.Ct. 755, 142 L.Ed.2d 881 (1999); *Lockheed Corp. v. Spink*, 517 U.S. 882, 890–91, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996); *Curtiss–Wright Corp. v. Schoonejongen*, 514 U.S. 73, 78, 115 S.Ct. 1223, 131 L.Ed.2d 94 (1995). Defendants contend that Plaintiff cannot complain about the company's decision to offer company stock as an investment option because this is a matter of plan design. "[T]he Plan provides that the Reliant Energy Common Stock Fund is to be among the investment options offered to participants, and the Plan provides that certain employee contributions are to be matched with REI common stock from the ESOP." [53] Plaintiff responds initially that he has pled that the Committees exercised discretion to establish, change, and terminate investment options under the Plans,[54] and therefore this allegation, whether or not directly contradicted by the Plans themselves, suffices at the motion to dismiss stage. Plaintiff also responds that the plain language of the Plans do not require either that the Company Stock Funds exist or that Plan assets be invested in them.

As for Plaintiff's initial response, the Court is not required to take at face value

Plaintiff's vague allegations if they are belied by the Plans themselves, which Plaintiff references in the Complaint. Courts have ample authority to dismiss ERISA claims at the pleading stage on the basis of plan documents, especially when the settlor doctrine is implicated. *See, e.g., Crowley v. Corning, Inc.*, 234 F.Supp.2d 222, 228 (W.D.N.Y.2002). Defendants contend that the Plans clearly contemplate that company stock will always be an investment option under the Plans. In Article VIII, Section 8.1, the REI Plan states, "The Committee from time to time may revise the number and type of Investment Funds provided in *Attachment A*." Attachment A is "incorporated by reference as part of the Plan." Attachment A states, "The Committee reserves the right to add and/or delete Investment Funds, *with the exception of the Reliant Energy, Incorporated Common Stock Fund*, from time to time and at any time." (Emphasis added.) Therefore, according to Defendants, the plain language of the REI Plan makes clear that the REI Fund was always to remain an investment option. Plaintiff reads the REI Plan documents differently. Plaintiff contends that because "Attachment A" is signed by the chair of the Benefits Committee, and is periodically changed by the Benefits Committee, the matters contained in "Attachment A" are not truly "hard-wired" into the Plan as contemplated by the settlor doctrine.

■■■ On the basis of the limited record available to the Court at this time, the Court is unable to conclude as a matter of law that the settlor doctrine precludes Plaintiff's imprudent investment claims. It appears from the Plan documents that the REI Fund was always to be in exis-

---

**52.** Plaintiff's Complaint, at ¶ 72.

**53.** Reliant Defendants' Motion, at 11 (citations to plans omitted).

**54.** *See* Plaintiff's Response, at 30 and Plaintiff's Complaint, ¶ 42.

tence, because REI's ESOP matching contributions were to be invested in that Fund. However, it is unclear whether the REI Fund always had to be offered as an investment option for *participants'* individual contributions. A definitive ruling requires a more complete factual record on whether the Plan required the REI Fund to be offered as an investment option as a matter of Plan design. Dismissal of Plaintiff's imprudent investment claims on the basis of the settlor doctrine is not appropriate at this time.

Defendants also contend that because this plan is an ESOP Plan, fiduciaries cannot be liable for providing one investment option consisting primarily of the employees' employer's (*i.e.,* company, stock). ERISA contains specific duties to diversify individual account plans. ESOPs are specifically exempted from these duties. *See* ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1) (stating that an ERISA fiduciary must "discharge is duties . . . solely in the interest of participants and beneficiaries and . . . (C) by diversifying the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so"); *Id.* at 1104(a)(2) ("In the case of an eligible individual account plan (as defined in section 1107(d)(3) of this title [including an ESOP] ), the diversification requirement of paragraph (1)(C) and the prudence requirement (only to the extent that it requires diversification) of paragraph (1)(B) is not violated by acquisition or holding of qualifying employer real property or qualifying employer securities."). Therefore, Defendants argue, to the extent that Plaintiff complains that the fiduciaries have a responsibility to diversify REI's ESOP employee matching funds, there is no such duty under ERISA, and Plaintiff's breach of fiduciary claims based on the ESOP contributions must fail. *See Matassarin v. Lynch,* 174 F.3d 549, 568 n. 20 (5th Cir. 1999) ("ERISA sound-investment require-

ments do not generally apply to an ESOP which is 'designed to invest primarily in securities issued by the sponsoring company.' "). While this argument has strong statutory support, the Court declines to dismiss Plaintiff's claims on this basis at this juncture.

Two courts of appeals—but not the Fifth Circuit—have held that an ERISA fiduciary can be liable for failing to diversify ESOP accounts, even in the face of contrary language in plan documents. *Moench v. Robertson,* 62 F.3d 553, 572 (3d Cir.1995) ("[K]eeping in mind the purpose behind ERISA and the nature of ESOPs themselves, we hold that, in the first instance, an ESOP fiduciary who invests the assets in employer stock is entitled to a presumption that it acted consistently with ERISA by virtue of that decision. However, the plaintiff may overcome that presumption by establishing that the fiduciary abused its discretion by investing in employer securities."); *see also Kuper v. Iovenko,* 66 F.3d 1447, 1459 (6th Cir.1995). No court of appeals has explicitly held to the contrary. Therefore, at this preliminary stage, and in the absence of contrary Fifth Circuit authority, the issues of the necessity and propriety of ESOP diversification require factual development. The Court cannot conclude at this time that there is no set of facts Plaintiff can prove to support a claim entitling him to relief regarding the investment in REI's securities. For purposes of Defendants' motion to dismiss, but without prejudice to future analysis on a more complete record, the Court holds that the fact that the REI Plan had an ESOP component does not relieve Defendants of potential liability. It is noted, however, that to prevail, if Plaintiff's cited authorities are applicable, ultimately Plaintiff will have to overcome a high hurdle to rebut the presumption that Defendants acted in accordance with

ERISA in failing to diversify the ESOP shares.[55]

### b. ERISA Section 404(c)

■ Defendants also contend that ERISA § 404(c), 29 U.S.C. § 1104(c) relieves it of any potential fiduciary liability in this case (under the Savings Plan, not the ESOP) because participants in the REI Plan exercised control over their accounts and are therefore responsible for any losses.[56] The § 404(c) provision is a safe harbor provision on which defendant bears the burden of pleading and proof. *In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 446 (3d Cir.1996); *Donovan v. Cunningham*, 716 F.2d 1455, 1467 n. 27 (5th Cir. 1983). Section 404(c) does not provide a basis for dismissal of the Complaint at this time. Plaintiff has properly alleged that Defendants have not complied with § 404(c) and the accompanying regulations of the Department of Labor. Therefore, § 404(c) is of no avail to Defendants at this time.[57]

### 2. Count II: Alleged Breach of Fiduciary Duties By Imprudent Investments In Company Stock Based on Material *Nonpublic* Information (the "Round–Trip" Trades).

■ In addition to the arguments regarding Count I, Defendants move to dismiss Count II on the additional ground that Plaintiff has not alleged a proper factual predicate establishing that the REI Benefits Committee knew or should have known of the round-trip trades. Plaintiff's Complaint alleges that all of Defendants' SEC disclosure statements issued during the time that the round-trip transactions were taking place were materially false and misleading, and that Defendants knew or should have known that they were false and misleading. Defendants complain that Plaintiff makes no factual allegations to support the claim of Defendants' knowledge. This contention is rejected. Plaintiff is not required to allege such detail in the Complaint on a breach of fiduciary duty claim. Allegations that the members

---

**55.** The *Moench* court explained the standard as follows:

> In attempting to rebut the presumption, the plaintiff may introduce evidence that "owing to circumstances not known to the settler and not anticipated by him [the making of such investment] would defeat or substantially impair the accomplishment of the purposes of the trust." Restatement (Second) § 227 comment g. As in all trust cases, in reviewing the fiduciary's actions, the court must be governed by the intent behind the trust—in other words, the plaintiff must show that the ERISA fiduciary could not have believed reasonably that continued adherence to the ESOP's direction was in keeping with the settler's expectations of how a prudent trustee would operate. In determining whether the plaintiff has overcome the presumption, the courts must recognize that if the fiduciary, in what it regards as an exercise of caution, does not maintain the investment in the employer's securities, it may face liability for that caution, particularly if the employer's securities thrive. *See Kuper*, 852 F.Supp. at 1395

("defendants who attempted to diversify its ESOP assets conceivably could confront liability for failure to comply with plan documents").

62 F.3d at 571–72.

**56.** Section 404(c) provides:

> "In the case of a pension plan which provides for individual accounts and permits a participant or beneficiary to exercise control over the assets in his account, if a participant or beneficiary exercises control over the assets in his account (as determined under regulations of the Secretary)- ... (B) no person who is otherwise a fiduciary shall be liable under this part for any loss, or by reason of any breach, which results from such participant's or beneficiary's exercise of control."

**57.** REI's counsel conceded at oral argument on this motion that because Section 404(c) provides an affirmative defense to liability, it likely is not a proper grounds on which to grant Rule 12(b)(6) dismissal.

of the REI Benefits Committee were simultaneously officers and directors of REI provide a sufficient basis for Plaintiff's claim that the members of the REI Benefits Committee should have known that the round-trip trades were taking place. Therefore, dismissal on this ground is not appropriate at this early stage of the proceedings.

### 3. Count III: Alleged Negligent Misrepresentations and Failure to Disclose Material Information

Count III contains two separate but related allegations of misrepresentations. First, Plaintiff contends that Defendants made misrepresentations in the REI financial statements filed with the SEC, which statements were disclosed or available to the REI Plan participants. Second, Plaintiff contends that Defendants breached their fiduciary duties by failing to disclose in the Plan information distributed to participants that the REI Fund was a high risk investment because (1) the energy trading business engaged in by REI is inherently more risky than a regulated business and (2) the round-trip trades artificially overstated REI's financial statements. Defendants move to dismiss both groups of allegations in this Count. Defendants argue that the misrepresentation claim based on its SEC filings must be dismissed because the alleged misrepresentations were not made in a fiduciary capacity; and the non-disclosure claim must be dismissed because ERISA does not require disclosure of information not specifically enumerated in the statute. Each of these arguments will be addressed separately.

### a. Defendants' Capacity in Which Alleged Misrepresentations Were Made

Plaintiff alleges that "the Form S–8's issued by Defendants expressly incorporated by reference the documents filed by [REI] with the SEC including but not limited to the form 10–K's and form 10–Q's from 1999, 2000 and 2001." [58] Plaintiff contends that the other SEC filings contain negligent misrepresentations, and, because they are incorporated by reference into the Form S–8, they are fiduciary representations. Further, Plaintiff alleges that Defendants disseminated the Form S–8 to Participants in a fiduciary capacity, [59] and Defendants exercised discretion in the dissemination of the Form S–8 by including reference to their SEC filings which were necessary for management of Plan assets and were intended to communicate to Participants information necessary for Participants to manage their retirement benefits under the Plan. [60]

Defendants contend that the Supreme Court's decision in *Varity Corp. v. Howe*, 516 U.S. 489, 505, 116 S.Ct. 1065, 134 L.Ed.2d 130 (1996), dictates that the misrepresentations alleged here, *i.e.*, those contained in the various SEC reports (other than the Form S–8) filed during the class period (August 2, 1999 through July 24, 2002), were not made in a fiduciary capacity and thus cannot give rise to fiduciary liability under ERISA. In *Varity*, the Supreme Court held that intentionally making statements about the future prospects of a company that were intentionally connected to statements about the future of plan benefits was an "administrative act" under ERISA. *Id.* In that case, the employer/plan administrator called a meeting of employees to discuss with them both

---

**58.** Plaintiff's Complaint, ¶ 105.

**59.** *Id.*, ¶ 109.

**60.** *Id.*, ¶ 110.

their benefits plans and the company's financial health. At the meeting, alleged misrepresentations were made. The Supreme Court held that making such representations in that context amounted to a fiduciary act.

 As more fully explained in Section III(B)(5) *supra,* the Court concludes that *Varity* does not require dismissal of Plaintiff's claim based on Defendants' filing and updating the REI Form S–8 and disseminating these documents and ones incorporated by reference to Plan participants.[61] Defendants have not demonstrated that Plaintiff will be able to prove no set of facts at this early stage in the litigation on which relief may be granted based on REI's discretionary acts, which may be classified as fiduciary acts, of preparing and/or updating the Form S–8, required by the SEC for disclosure of material information to employees invested in stock benefit plans.[62] The issues of breach of fiduciary duty should be decided on a more complete record.

#### b. ERISA Disclosure Requirements

Count III also alleges that certain *nondisclosures* were a breach of fiduciary duty. Defendants move to dismiss this allegation on the grounds that ERISA does not require the disclosure of information not enumerated in the statute.[63] Defendants maintain that ERISA enumerates in § 104(b)(4) the particular information that a plan is required to disclose, *e.g.,* a summary plan description, annual report or "other instruments under which the plan is established or operated." ERISA,

§ 104(b)(4), 29 U.S.C. § 1024(b)(4). Defendants maintain that Plaintiff seeks to impermissibly expand this list, contrary to ERISA. *See, e.g., Ehlmann v. Kaiser Foundation Health Plan,* 198 F.3d 552, 555 (5th Cir.2000).

 In *Ehlmann,* the Fifth Circuit held that the fiduciary duty requirements of § 404 of ERISA generally do not give rise to specific disclosure requirements in addition to those enumerated in other sections of the statute. *Ehlmann,* 198 F.3d at 555. However, unlike the claim at issue in *Ehlmann,* Plaintiff here contends that the "summary plan description," which ERISA expressly requires, issued by the REI Benefits Committee does not comply with ERISA.[64] ERISA § 102(a), 29 U.S.C. § 1022(a). Specifically, Plaintiff contends that the summary plan description did not disclose all of the relevant risks of investing in the REI Fund. The Court holds that Plaintiff's allegations are sufficient to survive Defendants' motion to dismiss. ERISA § 102(a) expressly requires that a summary plan description be "sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." A determination of whether the information provided to participants was adequate to inform them of the risks of investing in REI stock is a fact-intensive inquiry that must await a full factual record. The Court therefore declines to dismiss this claim at this stage.

---

**61.** These claims may have other problems, however.

**62.** This result, like the Court's decision to deny REI's motion to dismiss regarding Plaintiff's allegations that REI was a fiduciary of the REI Plan, *see* Section III(B)(5) *supra,* is based on a generous construction of the Complaint, as is required under Rule 12(b)(6).

**63.** Defendant also moves to dismiss all of Count III on the grounds that it does not comply with Rule 9(b). The Court rejects this argument. *See* Section II(B) *supra.*

**64.** Plaintiff's Complaint, ¶ 76.

### 4. Conclusion on Counts I through III

Despite reservations about some of Plaintiff's theories, the Court declines to dismiss at this preliminary stage Plaintiff's imprudent investment claims in Counts I and II of the Complaint, or Count III based on Defendants' alleged conduct in regard to the Form S–8, as well as Defendants' alleged non-disclosures in the summary plan description.

## IV. *CONCLUSION AND ORDER*

For the reasons discussed above, Defendants' motion to dismiss is granted in part and denied in part. Plaintiff does not have standing to sue RRI or any of the RRI Defendants in this suit. Plaintiff has properly alleged that the REI Benefits Committee members are fiduciaries. Plaintiff has sufficiently alleged under one theory that REI is a fiduciary of the REI Plan and its participants for purposes of this litigation. Plaintiff's allegations of *respondeat superior* liability as to REI are legally sufficient for present purposes. Plaintiff has alleged facts sufficient to support a theory that Ennis Knupp is a fiduciary of the REI Plan for purposes of the imprudent investment claims in this litigation. Plaintiff's allegations concerning the REI Compensation Committee as a fiduciary are insufficient.

Defendants' motion to dismiss Counts I, II and III is denied. The Court cannot conclude that Plaintiff can state no claim of breach of fiduciary duty on which relief may be granted. Section 404(c) does not absolve Defendants of liability at this time. It is therefore

**ORDERED** that the Reliant Defendants' Motion to Dismiss [Doc. # 37] is **GRANTED in part** and **DENIED in part**. It is further

**ORDERED** that Ennis Knupp's Motion to Dismiss [Doc. # 66] is **GRANTED in part** and **DENIED in part**. It is further

**ORDERED** that all Plaintiff's claims against RRI, the individual defendants who are members of the RRI Benefits Committee, with the exception of Mary P. Ricciardello, who was also a member of the REI Benefits Committee, are **DISMISSED**. It is further

**ORDERED** that the members of the Compensation Committee who do not serve on the Benefits Committee are **DISMISSED** from this action. It is further

**ORDERED** that Plaintiff's claims against Defendant R. Steve Letbetter are **DISMISSED**. It is further

**ORDERED** that the parties remaining in this suit shall appear for a scheduling conference on **Friday, February 27, 2004 at 3:00 p.m.** to establish a joint discovery/case management plan. The parties shall submit a Joint Report/Case Management Plan on or before **February 25, 2004**, with a courtesy copy delivered to Chambers. It is further

**ORDERED** that on or before **February 20, 2004**, Plaintiff shall **file a Third Amended Complaint** that conforms to the rulings in this Memorandum. No claims other than those explicitly permitted to proceed in this Memorandum may be pleaded. In the Third Amended Complaint, Plaintiff must specify for each count which Defendants are sued and, to the extent possible, shall allege the facts that support the claim as to each Defendant separately.